[Crim. No. 36969. Second Dist., Div. Five. Nov. 26, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
STEFAN MAX KNUEPPEL, Defendant and Respondent.

## COUNSEL

Royal M. Sorensen, City Attorney, Burke, Williams & Sorensen and Beatrice Joy Bruan for Plaintiff and Appellant.

Barry A. Fisher, Robert C. Moest and Larry J. Roberts for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—This is an appeal by the People[1] from an order dismissing a complaint which charged defendant with violating section 4500 of the Downey Municipal Code.[2] The matter is before us on transfer from the Appellate Department of the Los Angeles Superior Court, pursuant to rule 62 (a) of the California Rules of Court.

Section 4500 prohibits charitable solicitations within the City of Downey by anyone who has not received a permit from the chief of

---

[1]Represented by the City Attorney of Downey.
[2]All statutory references are to the Downey Municipal Code unless otherwise indicated.

police.[3] The complaint against defendant was dismissed following the sustaining of his demurrer which challenged the ordinance as violative of the First Amendment guarantee of free speech.[4]

The procedures adopted by the City of Downey to implement section 4500 call for the filing of an application with the chief of police by those seeking a charitable solicitation permit. (§ 4502.)[5] Upon receipt of an application complying with section 4502, the chief of police is to "conduct such investigation as he may deem necessary." (§ 4503.) ▮ The procedures for granting or denying a permit are contained in section 4504. It is to this section that defendant addresses his constitutional challenge.

---

[3]Section 4500 provides: "Soliciting. No person without first having applied for and received a permit from the Chief of Police, as provided in this Chapter, shall make any appeal to the public for a charity or charitable or religious purpose, either by soliciting or collecting gifts, contributions, donations or subscriptions or by promoting or conducting any sale, bazaar or exhibition or by any other means whatsoever at any place or to any person in the city."

[4]We are not told whether defendant merely commenced charitable solicitations without having filed an application for a permit or whether he applied for a permit and was rejected. Those questions were irrelevant to the issue raised by defendant's demurrer, that issue being the facial unconstitutionality of the licensing ordinances. An allegation of an attempt to comply with the permit requirement is not a prerequisite for standing to raise such a constitutional challenge. (*People* v. *Fogelson* (1978) 21 Cal.3d 158, 162-163, fn. 3 [145 Cal.Rptr. 542, 577 P.2d 677].)

[5]Section 4502 provides: "Application for Permit. Any person desiring to do any of the acts mentioned in Sections 4500 or 4501, shall file an application with the Chief of Police. Said application shall set forth the following information:

"(1) Name and address of the applicant. Whether the applicant is affiliated with or working for any other organization than the one for which this solicitation is intended.

"(2) Location of national, state and local headquarters, if any.

"(3) The names and addresses of all persons directly interested in or who in any manner will be engaged in the work.

"(4) The exact purpose for which the proceeds of the solicitations, sale, bazaar, exhibition, promotion, amusement, show, lecture, entertainment or other enterprise or any part thereof, are to be used, including the manner in which and the amount of any compensation intended to be paid to any person, firm, association or corporation out of such proceeds.

"(5) The total amount which is sought to be raised.

"(6) The bank or place where all or any part of the funds raised by such activity will be placed on deposit or invested.

"(7) What records of funds received will be kept and where. Where such records will be open to the public.

"(8) Whether the uniform or identification worn or carried resembles that of any other group in this area conducting a similar type of activity.

"(9) Such other information in respect to the character and past and proposed activity of the applicant and the parties directly interested in or engaged in the work as may be necessary to enable the Chief of Police to make a full and complete investigation."

The crucial language of section 4504 provides that if, after investigation, the chief of police is "of the opinion that the applicant has not stated true facts in his application, *or* that if a permit should be granted to the applicant, a fraud in all probability would be perpetrated upon the public, the Chief of Police *may* refuse to issue a permit to such applicant.

"Should the Chief of Police be satisfied that the application is truthful, that the applicant is acting in good faith *and* that in all probability a fraud would not be perpetrated upon the public, a permit *shall* be issued to such applicant..." (Italics added.)

The issue before us is whether the powers conferred upon the chief of police by section 4504 interfere unduly with the exercise of free speech so as to render the permit requirement of section 4500 unconstitutional.

In the recently decided case of *Schaumberg* v. *Citizens for Better Environ.* (1980) 444 U.S. 620 [63 L.Ed.2d 73, 100 S.Ct. 826], the United States Supreme Court held that charitable solicitations are clearly within the protection of the First Amendment, and that the state's power to regulate such solicitations must be exercised in a manner which does not "unduly... intrude upon the rights of free speech." (444 U.S. 620, at p. 633 [63 L.Ed.2d 73, at p. 85].)[6]  ▇ The prevention of fraud is a valid ground for governmental regulation of charitable solicitations; however, the regulations adopted must be narrowly drawn so as not to interfere unnecessarily with First Amendment freedoms. (*Schaumberg, supra*, 440 U.S. at pp. 636-637 [63 L.Ed.2d at pp. 87-88].)

▇ The use of the disjunctive "or" in the first paragraph and the conjunctive "and" in the second paragraph of section 4504 makes it clear that under the ordinance the probability of fraud is a separate and distinct criterion from the truthfulness of the applicant. The ordinance fails to specify what standards other than the truthfulness of the application may be used to assess the probability of fraud and thus leaves that assessment to the absolute discretion of the chief of police. By divorcing the question of fraud from the issue of the applicant's truth-

---

[6]*Schaumberg* v. *Citizens for Better Environ., supra*, 444 U.S. 620 [63 L.Ed.2d 73], was decided after we transferred the instant matter to this court. The city attorney had argued below that charitable solicitations, unlike solicitations for religious or political purposes, are not entitled to the full protection of the First Amendment. At oral argument the city attorney conceded that *Schaumberg* was dispositive of the issue, and that charitable solicitations are entitled to the full protection of the First Amendment.

fulness, the ordinance leaves open the possibility that the chief of police may decide that a fraud is probable because the cause for which the permit is sought is not deserving or is not truly charitable. This type of administrative discretion has been repeatedly condemned. (See e.g., *Cantwell* v. *Connecticut* (1940) 310 U.S. 296 [84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352].)

The statute under scrutiny in *Cantwell, supra*, provided that upon application for a solicitation permit, the secretary of the public welfare council was to determine whether the cause for which the permit was sought was a religious one or a bona fide object of charity or philanthropy. (310 U.S. at p. 302 [84 L.Ed. at p. 1217].) The Supreme Court held the statute invalid because it did not call for the issuance of a license as a matter of course, but required the secretary to appraise facts, exercise judgment, and form opinions. (310 U.S. at p. 305 [84 L.Ed. at pp. 1218-1219].) The court characterized the scheme as one of censorship and of prior restraint of speech (310 U.S. at pp. 305, 306 [84 L.Ed. at pp. 1218, 1219]), both forbidden by the First Amendment.

The defendants in *Cantwell, supra*, were engaged in solicitations of a religious nature, hence the opinion focused on that aspect of the statute. In the aftermath of *Schaumberg, supra*, 444 U.S. 620, however, it cannot reasonably be argued that any different standard or result would apply to an analysis of the portions of the *Cantwell* statute dealing with charitable or philanthropic purposes.

The proper role of the state[7] in preventing fraudulent solicitations is recognized in *Gospel Army* v. *City of Los Angeles* (1945) 27 Cal.2d 232 [163 P.2d 704]. The ordinance under review in *Gospel Army* required prospective solicitors to file with the department of social service a notice of intention which described the nature, purpose, method and estimated expenses of the proposed solicitation, and set forth in detail the solicitor's receipts, expenses and charitable distributions for the previous year. Once this information was provided, the department was obliged to issue information cards, at a cost to the solicitor of 4 cents each, which set forth the facts contained in the notice of intention, along with such other information as the board of social service commissioners decided would be of assistance to the *public* in determining the nature and worthiness of the solicitations. (27 Cal.2d at p. 238.) The department had no right under the ordinance to withhold the infor-

---

[7]Or its subdivisions.

mation cards or to disallow a proposed solicitation, although it could investigate the information it received and could recall the cards and amend them with corrected information. (27 Cal.2d at p. 239.)

Thus, as the court recognized, it was the public, not the department, which was to determine the nature and worthiness of the solicitation. The task of the department was merely to provide the public with sufficient information to enable it to make those determinations in an informed fashion. The state did not, the court pointed out, have the duty or the right to assume guardianship of the public mind to protect the public from false doctrine. (27 Cal.2d at p. 248.)

In *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460 [171 P.2d 8], the California Supreme Court upheld a portion of the Los Angeles regulatory ordinance which permitted the Department of Social Service to withhold a permit for solicitations conducted by means of a fixed receptacle situated in publicly owned or controlled places, if the information furnished to the department disclosed fraud. The opinion took pains to point out that prior restraint was warranted only under the peculiar factual situation in which use of information cards was ineffective, and that many other avenues of solicitation without prior restraints remained open to those who were refused a permit to maintain a fixed collection receptacle.[8] The ordinance here under review has no such limited or specialized application. The standards which we must follow are those set forth in *Schaumberg* and *Cantwell*.

There are strong indications in *Cantwell, supra*, 310 U.S. at pages 306-307 [84 L.Ed. at p. 1219], and in *Schaumberg, supra*, 440 U.S. 620 at pages 637-688 [63 L.Ed.2d 73 at page 88], that the state exhausts its powers to regulate for the purpose of preventing fraudulent charitable solicitations when it requires disclosure to the public of the solicitor's purposes and proposed expenditures, investigates and compares the solicitor's representations and his deeds, prohibits fraudulent misrepresentations and punishes them after the fact through the use of the penal

---

[8]*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536 [63 Cal.Rptr. 21, 432 P.2d 717], also dealt with a highly specialized situation: a prohibition on charitable solicitations by anyone purporting to provide guide dogs for the blind unless the solicitor held a valid license from the defendant board. The court held that the special problems of the blind justified special legislation for their protection. More importantly for our purposes, the limitation was based on a purely objective standard, possession of a license as a guide dog provider, and required no exercise of discretion on the part of the licensing agency. It is thus factually inapposite to the case at bar.

laws. But the initial decision as to whether the cause espoused by the solicitor is worthy or fraudulent must be left to an informed public. In this area as in all other areas of protected speech, the test of truth is in the market place of ideas.

The defect in the Downey ordinance here under review is that it goes beyond the requirement that the would-be solicitor provide the city with the information necessary to evaluate the worthiness of his cause, so that the city may in turn make that information available to the public. Rather it gives the chief of police the power to determine the worthiness of the cause and to exercise a prior restraint on solicitations based on that determination.[9]

The order of the municipal court sustaining defendant's demurrer and dismissing the complaint is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

---

[9]Interestingly, as noted above, section 4504 does not require the chief of police to withhold the permit if he determines that fraud is probable, but merely allows him to do so. Far from saving the ordinance, however, this merely emphasizes the excessive discretion which it confers upon the police chief and raises additional constitutional questions of vagueness.