**Jack CARRERAS, Alvin Marsden, and the International Society For Krishna Consciousness of Laguna Beach, Inc., Plaintiffs-Appellants/Cross Appellees.**

v.

**CITY OF ANAHEIM, Defendant-Appellee/Cross Appellant.**

Nos. 83–6542, 84–5620.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 7, 1984.

Decided Aug. 13, 1985.

Larry J. Roberts (argued), David Grosz, Barry A. Fisher, Fisher & Moest, Los Angeles, Cal., David M. Liberman, Culver City, Cal., for plaintiffs-appellants/cross appellees.

Charles H. Redd, Anaheim, Cal., for defendant-appellee/cross appellant.

Before TUTTLE *, Senior Circuit Judge, and NORRIS and BEEZER, Circuit Judges.

NORRIS, Circuit Judge:

The district court in this case decided that the City of Anaheim may constitutionally prohibit members of the International Society for Krishna Consciousness of Laguna Beach, Inc. (ISKCON) from soliciting donations in the parking areas and pedestrian walkways outside Anaheim Stadium, but could not prohibit ISKCON from soliciting donations on the exterior walkways of the Anaheim Convention Center. Both facilities are owned by the City of Anaheim. The district court rejected ISKCON's constitutional challenges to an Anaheim ordinance regulating solicitation in the city. Finally, the district court ruled that ISKCON was not a prevailing party entitled to attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976. 42 U.S.C. § 1988 (1982).

We affirm the district court's decision that Anaheim may not constitutionally prohibit ISKCON from soliciting donations on the walkways outside the convention center. We reverse the district court's decisions that the ordinance is constitutional on its face and that the city may prohibit ISKCON from soliciting outside the stadium. Finally, we hold that ISKCON is entitled to attorney's fees under § 1988.

## I. Factual Background and Procedural History

■ Plaintiffs in this case are ISKCON and two of its officers, Jack Carreras and Alvin Marsden. The defendant is the City of Anaheim (Anaheim). Members of ISKCON perform *sankirtan*, a proselytizing activity that involves the distribution of religious literature and the solicitation of donations in public places. The Anaheim ordinance at issue required persons soliciting within city limits to obtain a permit. In 1982, city officials denied ISKCON a permit to solicit donations in Anaheim. Pursuant to an informal agreement, ISKCON was permitted to perform *sankirtan* under

---

* Honorable Elbert P. Tuttle, Senior United States Circuit Judge, Eleventh Circuit, sitting by designation.

restricted conditions at the convention center but was totally prohibited from any solicitation at the stadium. In March, 1983, ISKCON brought this civil rights action in federal district court seeking a declaration establishing its right to solicit in the exterior areas of Anaheim Stadium and the Anaheim Convention Center and a declaration that the Anaheim ordinance regulating solicitation was unconstitutional, both on its face and as applied. ISKCON also sought injunctive relief.[1]

After a bench trial, the district court denied ISKCON relief except with respect to the convention center. ISKCON appeals the judgment to the extent it declares the ordinance to be constitutional, denies relief with respect to the stadium, and denies ISKCON attorney's fees. Anaheim cross-appeals the judgment to the extent it permits ISKCON to solicit at the convention center.

 Thus, the appeal and cross-appeal require us to answer two principal questions. First, may the City of Anaheim forbid ISKCON from soliciting donations on the sidewalks and parking lots outside Anaheim Stadium and on the walkways outside Anaheim Convention Center? Second, was the Anaheim ordinance governing solicitation unconstitutional, either on its face or as applied?[2]

## II. The Role of State Law

 We preface our analysis of the constitutional questions with a discussion of the role of state law in our decision. ISKCON challenges its exclusion from the stadium and convention center and the solicitation ordinance on the basis of both the United States Constitution and the California Constitution. If the California Constitution provides "independent support" for ISKCON's claims, then "there is no need for decision of the federal issue." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 294–95, 102 S.Ct. 1070, 1077, 71 L.Ed.2d 152 (1982);[3] *see also Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 345–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). The doctrine that federal constitutional issues should be avoided if a case can be decided on state law grounds, *see Siler v. Louisville & Nashville Railroad Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909),[4] is a corollary of the general principle that federal courts should avoid the adjudication of federal constitutional issues when alternative grounds are available, *see Jean v. Nelson*, —— U.S. ——, ——, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985). The Supreme Court has indicated that federal constitutional issues should be avoided even when the alternative ground is one of

---

1. The claim for injunctive relief was brought under 42 U.S.C. § 1983 (1982) and for declaratory relief under 28 U.S.C. § 2201 (1982); jurisdiction in the district court was founded on 28 U.S.C. § 1331 (1982), which provides general federal question jurisdiction, and 28 U.S.C. § 1343(3) (1982), which provides jurisdiction over civil rights actions. By pretrial order, pendent claims based on the California Constitution were added to the federal claims set forth in plaintiffs' complaint. The district court properly exercised jurisdiction over the pendent state law claims because ISKCON's state law claims satisfy all three requirements for pendent jurisdiction: (1) there was a common nucleus of operative fact between the state and federal claims; (2) the claims are such that the plaintiff would ordinarily be expected to try them together; and (3) the federal claims are substantial and not frivolous. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 723–24 (9th Cir.1984). Our jurisdiction rests on 28 U.S.C. § 1291 (1982).

2. We review de novo the district court's application of law to facts on free speech questions. *Fraser v. Bethel School District*, 755 F.2d 1356, 1359 n. 2 (1985), *petition for cert. filed*, 53 U.S. L.W. 3779 (U.S. April 30, 1985) (No. 84–1667); *see United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

3. *City of Mesquite*, like the case before us, involved a city ordinance that was challenged under both the state and federal constitutions. 455 U.S. at 291, 102 S.Ct. at 1075.

4. In *Siler*, "the Court held that if a controverted question of state law underlay the question of federal law, it was the district court's duty to decide the state question first (even though it had only pendent jurisdiction with respect to that question) in order to avoid if possible a federal constitutional question." P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 989 (2d ed. 1973).

state constitutional law. *See Askew v. Hargrave*, 401 U.S. 476, 478, 91 S.Ct. 856, 857, 28 L.Ed.2d 196 (1971); *Reetz v. Bozanich*, 397 U.S. 82, 85, 90 S.Ct. 788, 789, 25 L.Ed.2d 68 (1970).[5] The Sixth Circuit recently applied this doctrine of preference for state law grounds in a case analogous to the one before us,

> [There is a] long-stated preference in the federal courts for avoiding federal constitutional adjudication when valid state law grounds for decision are available....
>
> The state law claim upon which this litigation has now been terminated clearly involved "a common nucleus of operative fact" with Plaintiffs' federal constitutional claims, which we have previously described as "substantial".... Hence, the state law claim was properly subject to the jurisdiction of the federal court. Under these circumstances, the District Judge's holding on the Fourteenth Amendment issue was unnecessary.

*Seals v. Quarterly County Court*, 562 F.2d 390, 392 (6th Cir.1977) (citations omitted). Accordingly, we will first decide whether ISKCON's claims are sustainable on the basis of the California Constitution. If they are, we need not decide whether the City of Anaheim also violated the federal constitution.

### III. The Public Forum Issues

We begin our analysis of the question whether Anaheim may prohibit solicitation at Anaheim Stadium or the Anaheim Convention Center with the "public forum"

doctrine.[6] Because "of their vital role for people who lack access to more elaborate (and more costly) channels of communication," L. Tribe, *American Constitutional Law* § 12–21, at 689 (1978), certain public places have special status under the First Amendment and California's Liberty of Speech Clause. The doctrine of the public forum achieves a central purpose of the freedom of speech—the goal of equality of communicative opportunity—by opening avenues of expression for the "poorly financed causes of little people." *Martin v. City of Struthers*, 319 U.S. 141, 146, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943). As our court has articulated the theme of the public forum cases, regulation of

> free expression in the public areas ... affects most frequently those who advocate unpopular causes. It is those who seek to change the status quo who have historically taken to the streets or other public places to promote their causes. Those who are satisfied with our society as it is, normally use other forums.

*Rosen v. Port of Portland*, 641 F.2d 1243, 1251 (9th Cir.1981).

### A. Public Forum Doctrine under California Law

The California Constitution provides, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal.

---

**5.** *Reetz* and *Askew* established the principle that federal constitutional questions should be avoided when a state constitutional question may be dispositive in the context of *Pullman* abstention, see *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The *Pullman* abstention doctrine permits a district court to hold federal proceedings in abeyance while the parties seek resolution of the controversy through state court proceedings. The two justifications for *Pullman* abstention are to permit state court interpretations of uncertain questions of state law and to avoid premature adjudication of federal constitutional questions. In the case before us, however, *Pullman* abstention is not appropriate because there is no "substantial uncertainty" as to the meaning of the California Liberty of Speech Clause when ap-

plied to the facts of this case. *See Reetz*, 397 U.S. at 86, 90 S.Ct. at 790; *see also Manney v. Cabell*, 654 F.2d 1280, 1283 (9th Cir.1980) (*Pullman* abstention appropriate only if the "possibly determinative issue of state law is doubtful"), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Nasser v. City of Homewood*, 671 F.2d 432, 439 (11th Cir.1982) (In order for *Pullman* absention to be invoked, "[t]he issues of state law must be substantially uncertain or ambiguous, necessitating a construction by the state supreme court.").

**6.** *See generally* L. Tribe, *American Constitutional Law* §§ 12–21 to 12–22 (1978); Kalven, *The Concept of the Public Forum: Cox v. Louisiana*, 1965 S.Ct.Rev. 1.

Const. art. 1, § 2(a).[7] The test for whether a given municipal facility constitutes a "public forum" for the purposes of the California Liberty of Speech Clause was articulated by Chief Justice Traynor of the California Supreme Court in *In re Hoffman*, 67 Cal.2d 845, 434 P.2d 353, 64 Cal. Rptr. 97 (1967), a case involving a railway terminal where Vietnam War protestors distributed literature and discussed the war with persons using the terminal:

> The primary uses of municipal property can amply be protected by ordinances that prohibit activities that interfere with those uses.... First Amendment activities [cannot] be prohibited solely because the property involved is not maintained primarily as a forum for such activities.
>
> . . . .
>
> [I]n the present case, the test is not whether petitioners' use of the station was a railway use but whether it interfered with that use.

*Id.* at 850–51, 434 P.2d at 356, 64 Cal.Rptr. at 100.[8]

More recently in *Prisoners Union v. California Department of Corrections*, 135 Cal.App.3d 930, 185 Cal.Rptr. 634 (Cal. Ct.App.1982), the California Court of Appeal formulated the test as follows:

> [The term Public Forum is] constitutional shorthand for the proposition that ... government cannot regulate speech-related conduct in such places except in narrow ways shown to be necessary to serve significant governmental interests ... even if the regulation challenged as invalid leaves would-be speakers or parad-

ers with ample alternatives for communicating their views.

135 Cal.App.3d at 935, 185 Cal.Rptr. at 636 (quoting L. Tribe, *American Constitutional Law* § 12–21, at 689).[9]

Indeed, *Prisoners Union* involved a fact situation analogous to the case before us. In *Prisoners Union*, the plaintiff was an organization devoted to the rights and welfare of prisoners and their families. The organization sought access to the visitors' parking lot of the California correctional facility at Soledad. The California Court of Appeal stated:

> The question is not merely whether the parking lot is or is not a "public forum". Rather, the question is "one of balancing, based on the nature of the forum, the governmental interest in enforcing the restrictions against the inhibitions the restrictions impose on the speech related activity." ... In asserting that balance, the fact that a prison is involved is highly relevant, but not determinative. Ultimately, the answer depends upon whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time.

*Id.* at 938–39, 185 Cal.Rptr. at 638–39 (citations omitted). Because the state failed to demonstrate that normal activities at the prison could not be protected by less restrictive time, place and manner regulations, the court held that prohibition of expressive activity on the prison parking lot violated the California Liberty of

---

**7.** In recent years, the California courts have interpreted the California Liberty of Speech Clause to provide greater protection for expressive activity than does the First Amendment to the United States Constitution. *Wilson v. Superior Court*, 13 Cal.3d 652, 658, 532 P.2d 116, 120, 119 Cal.Rptr. 468, 472 (1975) (The California Liberty of Speech Clause is "more definitive and inclusive than the First Amendment."); *see also Robins v. Pruneyard Shopping Center*, 23 Cal.3d, 899, 908, 592 P.2d 341, 346, 153 Cal.Rptr. 854, 859 (1979), *aff'd*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *University of California Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Laboratory*, 154 Cal.App.3d 1157, 1164–65, 201 Cal.Rptr. 837, 843–44 (Cal.Ct.

App.1984); *Prisoners Union v. California Department of Corrections*, 135 Cal.App.3d 930, 939, 185 Cal.Rptr. 634, 639 (Cal.Ct.App.1982).

**8.** In *Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899, 592 P.2d 341, 153 Cal.Rptr. 854 (1979), the California Supreme Court made it clear that *Hoffman* rested on California law. *Pruneyard*, 23 Cal.3d at 908, 592 P.2d at 346, 153 Cal.Rptr. at 859.

**9.** *Prisoners Union* explicitly rests on California law. 135 Cal.App.3d at 939, 185 Cal.Rptr. at 639.

Speech Clause. *Id.* at 940–42, 185 Cal. Rptr. at 639–41.

■ Thus, for the purposes of the California Liberty of Speech Clause, the "public forum" doctrine is not limited to traditional public forums such as streets, sidewalks, and parks or to sites dedicated to communicative activity such as municipal theaters. Rather, the test under California law is whether the communicative activity "is basically incompatible with the normal activity of a particular place at a particular time." *Id.* at 939, 185 Cal.Rptr. at 639; *see also University of California Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Laboratory*, 154 Cal. App.3d 1157, 1164–65, 201 Cal.Rptr. 837, 843–44 (Cal.Ct.App.1984).

In the case before us, the exterior walkways and parking areas of Anaheim Stadium and the Anaheim Convention Center are much like the parking lot at Soledad prison considered in *Prisoners Union*. At all three locations, the public is free to come and go: at the stadium and convention center, the public travels over the parking lot and walkways to attend sporting events or exhibitions and, at Soledad, the public uses the parking lot while visiting the prison. The purposes of the three locations are very similar—the facilitation of parking and the free flow of pedestrian and vehicular traffic. Under California law as articulated in *Prisoners Union*, such locations must be open to expressive activity unless the activity is basically incompatible with the primary use of the facility. We conclude that solicitation by ISKCON is not incompatible with the intended uses of either the exterior areas of the stadium or the exterior walkways of the convention center. We will discuss the reasons for our conclusion regarding each location in turn.

### B. The Stadium

■ The district court ruled that Anaheim could prohibit ISKCON from soliciting outside Anaheim Stadium because the area did not constitute a public forum.[10] Under California law, the district court's decision may be affirmed only if the city meets its burden of establishing the basic incompatibility between the expressive activity and the intended use of the facility.[11]

The City of Anaheim makes a number of arguments in its attempt to meet this burden.[12] Initially, the city argues that pa-

---

**10.** In reaching this conclusion, the district court relied heavily on the Third Circuit's decision in *International Society for Krishna Consciousness, Inc. v. New Jersey Sports & Exposition Authority*, 691 F.2d 155 (3d Cir.1982) [hereinafter *Meadowlands*]. Because the *Meadowlands* decision did not involve California law, however, it is only marginally relevant to the state questions before us. Moreover, the *Meadowlands* decision involved solicitation inside a sports complex, not solicitation in the exterior areas.

We express neither approval nor disapproval of the *Meadowlands* decision, even as it interprets the federal constitution.

**11.** The district court's analysis assumed that the "public forum" doctrine was limited to two types of locations: (1) "traditional" public forums such as streets, sidewalks, and parks, and (2) locations dedicated to expressive activity such as municipal theaters. The district court then noted that the exterior areas of the stadium are separate and distinguishable from the surrounding streets and sidewalks and concluded that these areas should not be treated as the equivalent of sidewalks—a traditional public forum. The district court further observed that the city did not intend to create a public forum

at the stadium. The ultimate conclusion was that the exterior areas of the stadium did not constitute a public forum. Whatever the validity of this reasoning may be under federal law, it is not determinative under the California Liberty of Speech Clause. *See Hoffman*, 67 Cal.2d at 850–51, 434 P.2d at 356, 64 Cal.Rptr. at 100; *U.C. Nuclear Weapons Lab*, 154 Cal.App.3d at 1163–66, 201 Cal.Rptr. at 843–44; *Prisoners Union*, 135 Cal.App.3d at 939, 185 Cal.Rptr. at 639.

The district court also found that tenants of the stadium, the California Angels and the Los Angeles Rams, have a right to exclusive possession of the stadium and its exterior on game days. Under California law, however, even a privately owned facility that is open to the public is subject to the requirements of the public forum doctrine. *See Robins v. Pruneyard Shopping Center*, 23 Cal.3d at 908, 592 P.2d at 346, 153 Cal.Rptr. at 859 (1979), *aff'd*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). The area in question outside the stadium entrances where tickets are collected is clearly open to the public.

**12.** In addition to the arguments of the city that we consider in the text, Anaheim also argues that it did not intend to create a public forum in

trons may be offended by ISKCON solicitation outside the stadium. "Annoyance and inconvenience, however, are a small price to pay for preservation of our most cherished right." *Wirta v. Alameda-Contra Costa County Transit District*, 68 Cal.2d 51, 62, 434 P.2d 982, 989, 64 Cal.Rptr. 430, 437 (1967).

Further, the city argues that solicitation might reduce the profitability of the stadium because those patrons who donate to ISKCON would have less to spend at concession stands. However, speculation about lost sales at concession stands falls far short of meeting the burden imposed upon the city by the California Constitution. The city presented no evidence at trial that ISKCON's solicitation resulted in any loss of stadium income whatsoever. Thus, the record provides no basis for finding incompatibility between ISKCON's solicitation and the success of the stadium as a business enterprise.[13]

■ Finally, Anaheim argues that "bad conduct" by ISKCON solicitors in the past demonstrates the fundamental incompatibility of solicitation with the intended purposes of the stadium. Such "bad conduct" includes solicitation outside agreed upon areas, touching of stadium patrons without consent, retrieval by solicitors from patrons of "gifts" such as bumper stickers when a donation was not forthcoming, and misrepresentation of the purpose of solicitation. Such conduct does not prove that solicitation is inherently incompatible with the intended uses of the stadium. Most of

the allegedly "bad" conduct constitutes at most any annoyance to the stadium's patrons. As noted above, a mere annoyance does not establish incompatibility. To the extent that the conduct of ISKCON solicitors is fraudulent or is physically intrusive, the problem can be dealt with through narrowly tailored rules and security precautions. An occasional incident of misconduct cannot justify the absolute denial of access to ISKCON solicitors. On remand, the city is free to argue that the district court should impose appropriate conditions on ISKCON's activities at the stadium.[14]

■ We thus conclude that the decision of the district court that the City of Anaheim may ban solicitation in the exterior areas of the Anaheim Stadium is inconsistent with the Liberty of Speech Clause of the California Constitution.

### C. The Convention Center

We now turn our attention to the convention center walkways. The district court concluded that the convention center walkways constituted a public forum.[15] In order to successfully challenge this determination, Anaheim is required under California law to demonstrate the basic incompatibility between the primary use of the walkways of the convention center and ISKCON's activities. *Prisoner's Union*, 135 Cal.App. at 939, 185 Cal.Rptr. at 639.

■ The city's proffered justifications for banning solicitations on convention center walkways are identical to those offered

the areas outside the stadium. The city cites no authority for the proposition that whether Anaheim intended to create a public forum at that location is relevant under California law. Anaheim also argues that solicitation by ISKCON may create problems of crowd and traffic control but cites no evidence that those problems cannot be managed by restrictions short of a ban on all solicitation.

**13.** We express no opinion on the question whether, if such economic losses could be demonstrated, a ban on solicitation would be permissible under either the California Liberty of Speech Clause or the First Amendment. Given the failure of the city to make any showing of revenue loss, we need not reach that issue.

**14.** The district court's judgment permitting ISKCON to solicit at the convention center included narrowly tailored restrictions. For example, it provided that appellants could not solicit within ten feet of an entrance, exit, or ticket window. ISKCON does not challenge this portion of the district court's judgment.

**15.** The district court based its conclusion on federal law, reasoning that the convention center walkways were a public forum for the purposes of the First Amendment because the walkways were indistinguishable from the surrounding sidewalks, which are traditionally considered a public forum. For the reasons discussed in Part II of our opinion, we do not reach the federal constitutional issues.

with respect to the stadium. We reject the city's arguments concerning offensiveness, revenue losses and bad conduct for the same reasons that led to our conclusion that the city had not met its burden of demonstrating basic incompatibility at the stadium. Moreover, in arguing that the district court erred in holding that the convention center walkways constituted a public forum, Anaheim contends that the exteriors of the two sites cannot be meaningfully distinguished. We agree that the sites are indistinguishable for the purposes of the California Liberty of Speech Clause because the uses of the exterior areas of the stadium are not meaningfully distinguishable from the intended uses of the convention center walkways. In sum, the California Constitution requires us to affirm the district court's determination that ISKCON may solicit on the convention center walkways because they constitute a public forum.

## IV. The Solicitation Ordinance

### A. Mootness

We now turn to the question whether the Anaheim ordinance regulating solicitation is unconstitutional on its face or as applied.[16] Initially, we must decide whether the challenge to the ordinance is moot given action by the Anaheim City Council subsequent to the judgment of the district court. In November, 1984, the City Council repealed the ordinance under which ISKCON had been denied a solicitation permit

and enacted a new ordinance in its place. Anaheim, Cal., Code § 7.32 (1984). The replacement ordinance eliminates some but not all of the features of the prior ordinance found objectionable by ISKCON.[17]

We hold on the authority of *City of Mesquite*, 455 U.S. at 289, 102 S.Ct. at 1074, that the question of the constitutionality of the ordinance challenged by ISKCON was not rendered moot by its repeal in 1984. In *City of Mesquite*, an ordinance was revised to eliminate the language that was challenged as unconstitutional while the case was pending in the Court of Appeals for the Fifth Circuit. The Supreme Court held that the city's repeal of the objectionable language did not deprive the federal courts of jurisdiction to decide the constitutional question because of the well-settled principle "that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.*[18] The repeal of an ordinance is a factor bearing on the question whether a court should enjoin a city from reenacting objectionable provisions of the ordinance, "but that is a matter relating to the exercise rather than the existence of judicial power." *Id.*[19]

### B. The Constitutionality of the Ordinance

ISKCON argues that the Anaheim ordinance suffered from a number of constitutional infirmities. Initially, ISKCON con-

---

**16.** ISKCON alleges that it solicits at locations in Anaheim other than the stadium and convention center, and the city does not challenge this allegation. Thus, we must decide ISKCON's challenge to the solicitation ordinance.

**17.** For example, the old ordinance provided that permits could be valid for no longer than 60 days, Anaheim, Cal., Ordinance 4278 § 2 (Oct. 6, 1981, repealed 1984), but the new ordinance provides that permits may be issued for 6 month periods. Anaheim, Cal., Code § 7.32.-060(c) (1984). On the other hand, the new ordinance on its face does not differ from the old ordinance in its failure to require a judicial hearing before final denial or revocation of a solicitation permit. Anaheim, Cal., Code § 7.32 (1984).

**18.** The court noted that the test for mootness in cases such as this is "a stringent one." 455 U.S. at 289 n. 10, 102 S.Ct. at 1074 n. 10 " 'Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.' " *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203–204, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968) ).

**19.** On remand in this case, the city may attempt to show that the likelihood of its engaging in similar constitutional violations is sufficiently remote to make injunctive relief unnecessary. *City of Mesquite*, 455 U.S. at 289 n. 10, 102 S.Ct. at 1074 n. 10.

tends that the ordinance worked an impermissible content discrimination by regulating speech that included soliciting donations and not regulating similar speech that does not include solicitation. ISKCON also urges that the ordinance was constitutionally deficient because it failed to provide adequate procedural safeguards. Finally, ISKCON challenges the ordinance on the ground that it permitted city officials to exercise wide discretion in deciding whether to deny or revoke permits. We deal with each of ISKCON's contentions in turn.

### 1. Content Discrimination

■ We agree with ISKCON's contention that the ordinance worked an impermissible content discrimination[20] by singling out for regulation speech that involves soliciting donations. *Alternatives for California Women, Inc. v. County of Contra Costa*, 145 Cal.App.3d 436, 193 Cal. Rptr. 384 (Cal.Ct.App.1983), is directly on point. There the California Court of Appeal was confronted with an ordinance that banned solicitation during evening and nighttime hours. Striking down the ordinance, the court reasoned:

> Time, manner, and place regulations must be applicable to all speech without regard to content.... The challenged ordinance permits unlimited access by persons who wish to approach residents about random subjects, but it does not do this for persons or organizations soliciting funds (such as ACW). The ordinance discriminates on the basis of the content

of a speaker's message to the extent that a person who literally *solicits* from residents is regulated but one who seeks only a receptive listener is not. This disparity has the effect of making the ordinance constitutionally deficient.

*Id.* at 450, 193 Cal.Rptr. at 393 (citations omitted) (emphasis in original).[21] Just as the ordinance considered in *Alternatives for California Women* did, the Anaheim ordinance regulated only those speakers whose message includes an appeal for funds. We thus conclude that the ordinance on its face violated the California Constitution by discriminating between regulated and unregulated speech on the basis of its content.[22]

### 2. Insufficient Procedural Safeguards

■ ISKCON argues that the statute is unconstitutional on its face for a second reason, lack of adequate procedural safeguards.[23] We hold on the basis of *Hillman v. Britton*, 111 Cal.App.3d 810, 168 Cal.Rptr. 852 (Cal.Ct.App.1980), that the Anaheim ordinance is invalid because it did not provide for "prompt administrative decision on an application for a license and reasonably prompt access to the courts." *Id.* at 821, 168 Cal.Rptr. at 859-60.

Measured by the standards articulated in *Hillman*, the Anaheim ordinance was deficient. It did not require "the licensor to institute judicial proceedings to establish that the proposed solicitation is unprotected." *Id.* at 819, 168 Cal.Rptr. at 859. It

---

**20.** *See generally* Note, *Content Regulation and the Dimensions of Free Expression*, 96 Harv.L. Rev. 1854 (1983).

**21.** *Alternatives for California Women* is most plausibly interpreted as independently grounded on the the California Liberty of Speech Clause. The California Court of Appeal stated explicitly that it was interpreting both the California and United States Constitutions. 145 Cal. App.3d at 448 & n. 7, 193 Cal.Rptr. at 391 & n. 7. Moreover, it is not likely that the California Court of Appeal believed that its interpretation of the state constitution was compelled by decisions interpreting the federal constitution. The California Constitution specifically provides, "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution." Calif.Const. Art. I, § 24

(West 1983). *See People v. Pettingill*, 21 Cal.3d 231, 247-48, 578 P.2d 108, 118, 145 Cal.Rptr. 861, 871 (1978) (constructions of the California Constitution by state courts remain the law of California even if the United States Supreme Court narrows parallel provision of the United States Constitution).

**22.** Like the court of appeal in *Alternatives for California Women*, we do not reach the question whether a narrower ordinance, limited to "registration and identification procedures," *see Alternatives for California Women*, 145 Cal.App.3d at 449, 193 Cal.Rptr. at 392, would be valid even if it regulated only speech involving solicitation.

**23.** *See generally* Monaghan, *First Amendment "Due Process"*, 83 Harv.L.Rev. 518 (1970).

also did not require the city to act upon permit applications promptly. *Id.* at 821, 168 Cal.Rptr. at 859. In short, the ordinance on its face violated the California Constitution because it failed to provide adequate procedural protection for the freedom of expression.[24]

### 3. Impermissible Discretion

ISKCON argues that the solicitation ordinance was unconstitutional on its face for still a third reason: the ordinance permitted the denial or revocation of a permit on the basis of discretionary judgments by city officials. We agree with ISKCON's contention. The California Liberty of Speech Clause requires that the standards in such permit ordinances "must provide definite, objective guidelines for issuance or denial." *City of Indio v. Arroyo*, 143 Cal.App.3d 151, 158, 191 Cal.Rptr. 565, 570 (Cal.Ct.App.1983). As the California Court of Appeal has recently stated, "[A]ny procedure which allows ... officials wide or unbounded discretion in granting or denying permits is constitutionally infirm because it permits them to base their determination on the content of the ideas sought to be expressed." *U.C. Nuclear Weapons Labs*, 154 Cal.App.3d at 1170, 201 Cal.Rptr. at 847–48 (quoting *Dulaney v. Municipal Court*, 11 Cal.3d 77, 84, 520 P.2d 1, 6, 112 Cal.Rptr. 777, 782 (1974) ); *see People v. Fogelson*, 21 Cal.3d 158, 166, 577 P.2d 677, 681, 145 Cal.Rptr. 542, 546 (1978).[25]

ISKCON argues that the Anaheim ordinance granted impermissible discretion to city officials in both issuing and revoking solicitation permits. The ordinance failed to articulate any definite standards governing the initial decision whether to issue a permit. Moreover, city officials have claimed an inherent power to exercise broad discretion in denying applications for permits. Deposition of William P. Hopkins, 4 Reporter's Transcript at 14. Finally, the Anaheim City Council adopted a policy statement, supplementing the ordinance, which appears to require the exercise of substantial discretion in the denial and revocation of permits. The policy established a Solicitation Permit Review Board, which was directed to consider two factors in making the decision whether to issue a permit: "(1) Will substantial benefits accrue to the citizens of Anaheim from the applicant organization?" and "(2) Prior record of solicitation activities of the applicant organization in the City of Anaheim." City of Anaheim—California Council Policy No. 116 (Mar. 17, 1974, revised May 30, 1978). Both factors—"substantial benefits" and the applicant's "prior record"— are so indefinite and subjective that the Solicitation Permit Review Board would necessarily be required to exercise the kind of unbounded discretion that the California courts have held is impermissible under the state constitution.

---

**24.** *Hillman* adopted the analytical framework developed by the United States Supreme Court in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), which established the principle that administrative regulations impinging on expressive activity must provide adequate procedural protection to safeguard the freedom of speech. The opinion in *Hillman* does not specifically refer to the California Constitution. The analytical framework developed by the United States Supreme Court in *Freedman* has, however, been applied by the California Supreme Court, *Burton v. Municipal Court*, 68 Cal.2d 684, 695, 441 P.2d 281, 288, 68 Cal. Rptr. 721, 728 (1968), in interpreting the California Liberty of Speech Clause as well as the First Amendment of the United States Constitution, *id.* at 687, 441 P.2d at 283, 68 Cal.Rptr. at 723; *see also Alternatives for California Women*, 145 Cal.App. 448 & n. 7, 193 Cal.Rptr. at 391 & n. 7

(*Hillman* cited as persuasive authority for interpreting the California Constitution).

**25.** The *U.C. Nuclear Weapons Labs* court "evaluate[d] the free speech claim ... as a matter of state constitutional law." 154 Cal.App.3d at 1164, 201 Cal.Rptr. at 843. *Dulaney* considered both the California Constitution and the United States Constitution. 11 Cal.3d at 81, 520 P.2d at 4, 112 Cal.Rptr. at 780. Both constitutions were invoked as grounds for decision in *Fogelson*, 21 Cal.3d at 161, 577 P.2d at 678, 145 Cal.Rptr. at 543, and *City of Indio*, 143 Cal.App.3d at 153, 191 Cal.Rptr. at 566. As the California Supreme Court has observed in an analogous situation, *see Pruneyard*, 23 Cal.3d at 908–09, 592 P.2d at 346, 153 Ca.Rptr. at 859, the citation of federal precedent in state court decisions does not diminish their usefulness as guides to the meaning of the California Constitution.

ISKCON argues that the ordinance also vests in city officials broad discretion to revoke permits. The ordinance provided for the revocation of permits if the "purposes set forth in the party's application are not being subserved" or if the solicitation would "operate to defraud" the public. Anaheim, Cal. Ordinance 4278 § 2. (Oct. 6, 1981, repealed 1984). We agree with ISKCON's contention that these standards fail to provide the "definite, objective guidelines" required by the California Constitution. *City of Indio,* 143 Cal.App.3d at 158, 191 Cal.Rptr. at 570. Plainly, the decision whether or not the purposes of a solicitation are "subserved" requires the exercise of wide discretion by the decision maker. In evaluating the fraud provision, we find guidance in *People v. Knueppel,* 117 Cal. App.3d 958, 173 Cal.Rptr. 466 (Cal.Ct.App. 1980). There, the California Court of Appeal held that a solicitation permit ordinance that required a city official to make an unguided determination whether solicitation by the permit holder would be fraudulent was unconstitutional because it created discretionary power to censor free expression. *Id.* at 962–63, 173 Cal.Rptr. at 467–68.[26]

Thus, we conclude that the Anaheim solicitation permit ordinance on its face violates the California Constitution for three reasons: (1) the ordinance worked an impermissible content discrimination; (2) it lacked adequate procedural safeguards; (3) and it permitted city officials to deny or revoke permits on the basis of unguided discretion. Because we hold the ordinance to be unconstitutional on its face, it is unnecessary for us to reach the further question whether the ordinance was also unconstitutional as applied to ISKCON.[27]

### V. Attorney's Fees

Appellants claim on appeal that the district court erred in denying them attorney's fees at trial. ISKCON argues it was a

prevailing party because it obtained relief at trial with respect to the convention center. *Cf. Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (" '[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit.' ") (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). Whether ISKCON was a prevailing party at the trial is now moot because ISKCON has prevailed on all issues on this appeal. On remand, ISKCON's request for attorney's fees may be resubmitted to the district court.

■ That we base our decision on ISKCON's pendent state constitutional claims does not affect our determination that fees are appropriate. When the plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative fact with a substantial federal claim, fees may be awarded under § 1988. *See Gagne v. Maher,* 594 F.2d 336, 339–40 (2d Cir.1979); *Lund v. Affleck,* 587 F.2d 75, 76–77 (1st Cir.1978); *cf. Bartholomew v. Watson,* 665 F.2d 910, 912–14 (9th Cir.1982) (allowing fees under § 1988 for work done on federal claim in state court as a result of *Pullman* absention by federal district court).

### VI. Conclusion

We hold on the basis of the California Constitution that the city may not prohibit solicitation by ISKCON at Anaheim Stadium or Convention Center and that the Anaheim ordinance at issue on this appeal was unconstitutional on its face. We further hold that ISKCON is a prevailing party entitled to an award of attorney's fees under section 1988. Accordingly, we AFFIRM in part, REVERSE in part, and RE-

---

**26.** We note that the city is not powerless to protect the public from fraud in solicitation. It may enact ordinances narrowly tailored to deal with that problem. *See Kneuppel,* 117 Cal. App.3d at 963–64, 173 Cal.Rptr. at 468–69.

**27.** As we have already noted, the ordinance that was challenged in the district court is no longer in effect. The question of the constitutionality of the new ordinance is not before us in this appeal.

MAND for further proceedings not inconsistent with this opinion.