UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, CLC, United Food and Commercial Workers Union, Local 222, AFL–CIO, CLC, Unincorporated Associations; William Schmitz, Frank Cassidy, Sally Sanchez, Leroy Bergin, Individuals; Millwright, Machinery & Erectors Local 1463, An Unincorporated Association, Appellees,

v.

IBP, INC., a Delaware Corporation, K.A. Orr, Governor of the State of Nebraska; Robert Spire, Attorney General; Colonel Harold LeGrande, Superintendent of the State Patrol; Raymond Brown, Commander of the Nebraska State Patrol for the area encompassing Dakota City; James Carmona, Adjutant General of the Nebraska National Guard, Appellants,

Kurt A. Hohenstein, Dakota
County Attorney.

No. 87–2251.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1988.
Decided Sept. 8, 1988.

Douglas Peterson, Asst. Atty. Gen., Lincoln, Neb., for appellants.

Renee L. Bowser, Washington, D.C., for appellees.

Before McMILLIAN, Circuit Judge, ROSS, Senior Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Three unions and union officials from one of the unions brought this declaratory judgment action challenging the validity of two Nebraska picketing statutes. The district court found a justiciable controversy was presented and ruled both statutes were unconstitutional. The court held the "numbers/distance provision" of Neb.Rev. Stat. § 28–1318(1)–(3) constituted a content-neutral regulation of pure speech that was facially overbroad. The court further held the "communications provision" of Neb. Rev.Stat. § 28–1317(1)(a) was a content-based regulation not limited to "fighting

*The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. Appellees are the Governor of Nebraska, the Attorney General of Nebraska, the Superintendent of the Nebraska State Patrol, the Commander of the Nebraska State Patrol for the area encompassing Dakota City, and the Adjutant General of the Nebraska National Guard. The

words" which violated the First and Fourteenth Amendments.

On appeal, defendant state officials [1] claim there is no case or controversy sufficient to establish jurisdiction and further that limiting constructions are available which would render both statutes constitutional. We find, for the reasons discussed below, that the case is properly before us for decision. We agree with the district court that the numbers/distance provision and the second clause of the communications provision are facially overbroad. We find, however, that the first clause of the communications provision prohibiting "threatening language" is readily subject to a narrowing construction limiting its application to "fighting words." Accordingly, we uphold the "threatening" clause of section 28–1317(1)(a).

I.  FACTS

Plaintiffs United Food and Commercial Workers International Union and United Food and Commercial Workers Local 222 ("the union") have represented workers at the IBP, Inc., beef processing plant in Dakota City, Nebraska, for many years. In 1982, union members went out on strike after negotiators were unable to reach agreement on a contract with IBP officials. During the strike, the Dakota County Attorney specifically informed the union that Nebraska's mass picketing law would be enforced. Violence erupted, and numerous arrests were made. Some picketers were charged with violating the numbers/distance provision of Neb.Rev.Stat. § 28–1318(1)–(3), which prohibits "any form of picketing in which there are more than two pickets at any one time within either fifty feet of any entrance to the premises being picketed or within fifty feet of any other picket or pickets." [2]

County Attorney of Dakota County declined to join in the appeal. Defendant IBP, Inc., was dismissed by the district court as a defendant, and no appeal has been taken from this dismissal.

2. Neb.Rev.Stat. § 28–1318(1)–(3) (1985), provides as follows:

(1) Mass picketing shall mean any form of picketing in which there are more than two

At the end of 1986, the union again engaged in a labor dispute with IBP. Prior to the expiration of the collective bargaining agreement in December, 1986, union representatives met with state law enforcement officials to discuss strike procedures in the event of another strike. Union representatives expressed their view that the provisions of the Nebraska mass picketing law were unconstitutional, based upon a federal district court decision striking down similar provisions of Texas law.[3] The Dakota County Attorney told the union that until the Nebraska law was found unconstitutional or the law was changed, he would have to enforce it. Officials from the Nebraska State Patrol said nothing to contradict the county attorney's position regarding the statutes, and specifically did not disavow an intention to enforce the law during the ensuing labor dispute.

In December, 1986, IBP locked out the Dakota City employees, and the union went on strike. During the strike, the county attorney notified the union both orally and in writing of his power and responsibility to enforce the mass picketing law. He informed the union that he would not literally enforce the law unless there were "problems," and, acting in cooperation with the Nebraska State Patrol, he determined the allowable parameters of the union's picketing activity. At times, he denied the union access to the side of the plant where employees would exit after work. Other times, he allowed technical violations of the law to occur. For example, he located the union's picket shacks closer than fifty feet to each other, and he permitted 25 to 26 demonstrations to occur, subject to guidelines he had imposed.

All of the union's picketing activity was subject to his approval, however, and because of their fear of arrest, union members picketed within the confines of the county attorney's directions. No arrests or prosecutions under the challenged statutes occurred, and the dispute between the union and IBP was eventually resolved.

In April, 1987, plaintiff Millwright, Machinery & Erectors Local 1463 conducted an area standards picket protesting the payment of less than union scale wages at the United Parcel building in Omaha, Nebraska. The union and its picketers were aware of the Nebraska mass picketing statutes and picketed within the restrictions imposed by the numbers/distance provision. The company marked fifty foot intervals at the site and a police officer reviewed the location of the pickets during the strike. No arrests or threats of arrest were made. Approximately one week after commencing picketing, the union discontinued its activities because it perceived that picketing within the statutory restrictions was ineffective. A union official testified that picketing would be resumed in furtherance of the union's area standards message were it not for the limitations imposed by the numbers/distance provision.

## II. JUSTICIABILITY

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, plaintiffs sought a declaration from the district court that both the numbers/distance and the communications[4] provisions of the Nebraska mass

pickets at any one time within either fifty feet of any entrance to the premises being picketed or within fifty feet of any other picket or pickets, or in which pickets constitute an obstacle to the free ingress and egress to and from the premises being picketed or any other premises, or upon the public roads, streets, or highways, either by obstructing by their persons or by the placing of vehicles or other physical obstructions.

(2) A person commits the offense of mass picketing if singly or in concert with others, he engages in or aids and abets any form of picketing activity that shall constitute mass picketing as defined in subsection (1) of this section.

(3) Mass picketing is a Class III misdemeanor. Each violation shall constitute a separate offense.

3. *Nash v. Texas,* 632 F.Supp. 951 (E.D.Tex.1986), *aff'd in part, rev'd in part sub nom., Nash v. Chandler,* 848 F.2d 567 (5th Cir.1988). *See Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 848 F.2d 544 (5th Cir.1988).

4. The "communications provision," Neb.Rev. Stat. § 28–1317(1)(a) (1985), provides as follows:

(1) A person commits the offense of unlawful picketing if, either singly or by conspiring with others, he interferes, or attempts to inter-

picketing law were unconstitutional. Relief under the Declaratory Judgment Act is available only when an "actual controversy" is presented.[5] This statutory limitation is equivalent to the constitutional limitation that federal courts may exercise jurisdiction only over actual "cases or controversies." U.S. Const. art. III, § 2 cl. 1; *Steffel v. Thompson*, 415 U.S. 452, 458, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Blatnik Co. v. Ketola*, 587 F.2d 379, 381 (8th Cir. 1978).

A "case or controversy" is presented when the "conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (citing *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)). The difference between an abstract question and a "case or controversy" is necessarily one of degree and must be determined by a review of the facts presented in each case. *Babbitt*, 442 U.S. at 297, 99 S.Ct. at 2308; *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

After considering the circumstances presented in this case, the district court held there was a justiciable case or controversy because plaintiff unions [6] possessed the requisite standing and the issues were not moot. The doctrines of standing and mootness are distinct but related aspects of justiciability under Article III.

■ The doctrine of standing focuses on whether the plaintiff before the court is the proper party to request adjudication of a particular issue. *Flast v. Cohen*, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968); *Defenders of Wildlife v. Hodel*, 851 F.2d 1035, 1038 (8th Cir.1988). The purpose of the standing requirement is to ensure the parties have "such a stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir.1988). In order to establish they have standing to sue, plaintiffs must show they have suffered "some actual or threatened injury" fairly traceable to the challenged conduct of the defendants that is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Defenders of Wildlife*, at 1039; *McLain*, at 1048.

---

fere, with any other person in the exercise of his or her lawful right to work, or right to enter upon or pursue any lawful employment he or she may desire, in any lawful occupation, self-employment, or business carried on in this state, by

    (a) Using threatening language toward such person or any member of his or her immediate family, or in his, her or their presence or hearing, for the purpose of inducing or influencing, or attempting to induce or influence, such person to quit his or her employment, or to refrain from seeking or freely entering into employment, or by persisting in talking to or communicating in any manner with such person or members of his or her immediate family against his, her or their will, for such purpose.

5. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides:

    In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

6. An association has standing to sue on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *New York State Club Ass'n, Inc. v. City of New York*, — U.S. —, —, 108 S.Ct. 2225, 2231, 101 L.Ed.2d 1 (1988) (citing *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

Plaintiffs must possess the requisite injury with respect to each of the statutes they wish to challenge. *See Babbitt,* 442 U.S. at 292, 99 S.Ct. at 2305.[7] Defendants argue there is no actual or threatened injury in this case because no picketers were arrested, prosecuted, or threatened with prosecution during the United Food and Commercial Workers' most recent picketing activities, even though violations of the numbers/distance provision occurred at the IBP site. This argument misapprehends the nature of the injury in fact requirement. Plaintiffs need not expose themselves to actual arrest or prosecution if they legitimately possess more than an "imaginary or speculative" fear of prosecution. *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2309; *Steffel,* 415 U.S. at 459, 94 S.Ct. at 1215.

In *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Court found an actual controversy where a plaintiff had twice been warned to stop distributing handbills and had been told that, if he continued to pass out leaflets, he would likely be prosecuted. His companion was in fact prosecuted, and the Court held this evidence constituted "ample demonstration that petitioner's concern with arrest has not been 'chimerical.' In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.* at 459, 94 S.Ct. at 1215–1216. But for the existence of the challenged statute, the petitioner would have continued his leafleting activities; his injury was sufficiently concrete to confer standing.

The Tenth Circuit has also found sufficient injury to confer standing where a plaintiff refrained from continuing conduct which had precipitated past arrest for fear of rearrest. *Wilson v. Stocker,* 819 F.2d 943, 946 (10th Cir.1987). The court found the plaintiff suffered not only the threat of future prosecution, but an ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights. *Id.* Other courts have found sufficient threatened injury to confer standing even when government officials disclaimed an intention to prosecute because of concerns about a statute's constitutionality, because they would not rule out such prosecution. *See KVUE, Inc. v. Moore,* 709 F.2d 922, 928–30 (5th Cir.1983), *aff'd,* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984).

■ In this case, the county attorney indicated clearly to the United Food and Commercial Workers Union his authority to enforce the picketing laws and acted throughout the union's strike against IBP to curtail the union's picketing activities. Union official William Schmitz testified that but for the existence of the Nebraska picketing statutes and the county attorney's statements regarding enforcement, the union would have had more people picketing, would have had more people stationed at the entrances to the plant, and would have held more demonstrations. Schmitz limited picketing activities and organized picketers in accordance with the county attorney's directions to avoid "problems," which the county attorney had warned would trigger enforcement of the statutes. Union members had reason to fear arrest based upon past experience: members had been arrested and prosecuted for violation of the numbers/distance provision in 1982. Contrary to defendants' argument, we believe such past experience is relevant to determining the existence of a present threatened injury. *See City of Houston v. Hill,* —— U.S. ——, 107 S.Ct. 2502, 2508 n. 7, 96 L.Ed.2d 398 (1987); *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974); *Wilson,* 819 F.2d at 946.

Past arrests or threats of arrest, while relevant, are not necessary to establish the

---

7. Since plaintiff Millwright, Machinery & Erectors Local 1463 has not been subject to, has not engaged in, and has not alleged any interest in engaging in conduct allegedly violative of the communications provision, for purposes of this appeal, we consider only whether plaintiff United Food and Commercial Workers unions have standing to sue. Because we find they do, we need not consider the standing of the union officials. *See Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 299 n. 11, 99 S.Ct. 2301, 2309 n. 11, 60 L.Ed.2d 895 (1979).

justiciability of plaintiffs' claim, however, and we reject defendants' contention that the lack of any previous arrests under the communications provision precludes plaintiffs' current challenge to that statute. Where plaintiffs allege an intention to engage in a course of conduct arguably affected with a constitutional interest which is clearly proscribed by statute, courts have found standing to challenge the statute, even absent a specific threat of enforcement.

In *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), for example, the Supreme Court accepted jurisdiction over a school teacher's challenge to an Arkansas law which prohibited the teaching of the theory of evolution or the use of any textbook that teaches the theory. School administrators had selected a coursebook containing a chapter on evolution for use in the next academic year. Although the statute had never been enforced, the Court reached the merits of plaintiff's challenge, finding she faced "at least a literal dilemma because she was supposed to use the new textbook ... but to do so would be a criminal offense and subject her to dismissal." *Id.* at 100–02, 89 S.Ct. at 268–69.

In *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Court also found a justiciable controversy and held physicians had standing to challenge Georgia statutes which made abortion a crime "despite the fact that the record does not disclose that any one of them has been prosecuted, or threatened with prosecution, for violation of the State's abortion statutes." *Id.* at 188, 93 S.Ct. at 745. *See Carey v. Population Services International*, 431 U.S. 678, 682–84, 97 S.Ct. 2010, 2014–15, 52 L.Ed.2d 675 (1977); *Lake Carriers' Ass'n v. MacMullan*, 406 U.S.

498, 504–08, 92 S.Ct. 1749, 1754–56, 32 L.Ed.2d 257 (1972).

Lower courts have followed suit. The Fifth Circuit has flatly stated: "[t]hat the statute has not been enforced and that there is no certainty that it will be does not establish the lack of a case or controversy." *KVUE, Inc.*, 709 F.2d at 930. *See International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 817–19 (5th Cir.1979). This court has also entertained constitutional challenges where the statute clearly applies to the plaintiff, and the plaintiff has stated a desire not to comply with its mandate. *See Pursley v. City of Fayetteville*, 820 F.2d 951, 953, 957 (8th Cir.1987); *Blatnik Co. v. Ketola*, 587 F.2d 379, 381 (8th Cir.1978).

Commentators agree with this result: "[w]here the enforcement of a regulatory statute would cause plaintiff to sustain a direct injury, the action may properly be maintained, whether or not the public officer has 'threatened' suit; the presence of the statute is threat enough," at least where the challenged statute is not moribund. 6A Moore's Federal Practice, paragraph 57.18[2] at 57–189 (2d ed. 1987). *See Seattle School District No. 1 v. Washington*, 633 F.2d 1338, 1342 n. 1 (9th Cir.1980), *aff'd*, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed. 2d 896 (1982).

In *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), the Supreme Court found a case or controversy presented by a union's challenge to the consumer publicity provisions of a comprehensive statute governing agricultural employment relations [8] in circumstances very similar to those presented by the union's challenge to the communications provision in this case. The publicity provision prohibited the use of

---

**8.** The Court also found the union's challenge to the statute's election procedures and criminal penalty provisions justiciable, holding the union "should not be expected to pursue their collective activities at their peril." *Babbitt*, 442 U.S. at 303, 99 S.Ct. at 2311. *See id.* at 299–300, 302–03, 99 S.Ct. at 2309, 2310–11. The Court refused to find a case or controversy with respect to two other provisions, one of which the district court had reviewed on its own motion, the other of

which presented too much conjecture concerning its potential application. *Id.* at 303–05, 99 S.Ct. at 2311–12.

Although the Court's analysis focused on whether there was a "case or controversy," the discussion suggests a merging of the issues of standing and case or controversy for purposes of decision in that case. *See id.* at 299 n. 11, 99 S.Ct. at 2309 n. 11.

"dishonest, untruthful and deceptive publicity." The union had engaged in publicity campaigns, had alleged an interest in continuing to do so, and claimed that "erroneous statement [was] inevitable in free debate." *Id.* at 301, 99 S.Ct. at 2310 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 271, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964)). Defendants argued the unfair labor practice of dishonest consumer publicity may never be prosecuted as a criminal violation, but the Court found a case or controversy presented based upon the union's contention that its members were being forced to forgo the full exercise of their First Amendment rights. *Id.* at 302, 99 S.Ct. at 2310.

The communication provision in the case at bar prohibits the interference or attempted interference with persons in the exercise of their right to work by using threatening language or by persisting in talking to or communicating in any manner with them for the purpose of influencing or attempting to influence them to quit their employment. Neb.Rev.Stat. § 28–1317(1)(a). The provision plainly circumscribes union members' speech to strikebreakers, and the union alleges that its members' knowledge of the statute, combined with the restrictions imposed on access to the entrance used by working IBP employees during the most recent strike, effectively curtailed the striking workers' right to communicate with workers hired by IBP to replace them and caused them to forgo the full exercise of their First Amendment rights.

Despite the obvious parallels with *Babbitt*, defendants distinguish the circumstances in *Babbitt* from those presented here on the ground that in *Babbitt* the state had not disavowed any intention of invoking the statute against the union, whereas in this case the state has submitted affidavits of the Major General of the Nebraska National Guard, the Colonel of the Nebraska State Patrol, and the Attorney General which state the above officials have no "present plan" to enforce either the numbers/distance or the communications provisions of the Nebraska picketing law in the labor dispute between the union and IBP. The district court rejected this evidence as showing "no more than a hesitant, qualified, equivocal and discretionary present intention not to prosecute," the clear implication of which was that the state's position could well change.

We too reject defendants' argument that their affidavits deprive the court of jurisdiction to decide plaintiffs' claims. It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).[9]

Thus, in *City of Mesquite*, the Supreme Court refused to dismiss a constitutional challenge to an ordinance which had been repealed, since the Court found the repeal "would not preclude [the city] from reenacting precisely the same provision if the District Court's judgment were vacated." 455 U.S. at 289, 102 S.Ct. at 1075. *See Carreras v. City of Anaheim*, 768 F.2d

---

9. While cases discussing a defendant's voluntary cessation of a challenged practice analyze the issue as one of mootness, we find such cases relevant to determining the effect of defendants' affidavits in this case. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). A case is moot only when there is no reasonable expectation that the challenged activity will recur, an inquiry similar to whether a plaintiff lacks standing because there is no "credible threat of prosecution." *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2309.

Defendants do not argue that the settlement of the labor dispute between IBP and the union renders the case moot or otherwise deprives the court of jurisdiction, and we agree with the district court that a labor dispute of this type, given the strike-filled history of the parties' relationship and the union's continued representation of IBP workers, falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. *See Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122–27, 94 S.Ct. 1694, 1698–1700, 40 L.Ed.2d 1 (1974).

1039, 1047 (9th Cir.1985). Other courts have refused to dismiss cases where a governmental body discontinued a wrongful practice and promised not to resume it, since "[p]resent intentions may not be carried out," and "it is not certain that changes in leadership or philosophy might not result in reinstitution of the [challenged] policy." [10] *Phillips v. Pennsylvania Higher Education Assistance Agency*, 657 F.2d 554, 569–70 (3d Cir.1981), *cert. denied*, 455 U.S. 924, 102 S.Ct. 1284, 71 L.Ed.2d 466 (1982). *See Solomon v. City of Gainesville*, 763 F.2d 1212, 1213 (11th Cir.1985) (city commission's direction to discontinue any and all prosecutorial action now and in the future with respect to plaintiff's activities does not deprive court of jurisdiction).

■ Defendants in this case did not disclaim their intent to enforce the Nebraska picketing statutes until the day of the hearing on the union's motion for a temporary restraining order, and then said only they had no present intention to enforce the statutes with respect to the then-current dispute between IBP and the union. Because defendants—even by their own statements—are "free to return to [their] old ways," the public interest in having the legality of the statutes settled prevents a finding of nonjusticiability in this case. *City of Mesquite*, 455 U.S. at 289 n. 10, 102 S.Ct. at 1074 n. 10; *W.T. Grant & Co.*, 345 U.S. at 632, 73 S.Ct. at 897. *See* 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 3533.7 at 359 (1984).

Both the numbers/distance and communications provisions by their terms apply directly to plaintiffs' picketing activity. Plaintiffs have picketed in the past and been subjected to threats of arrest as well as actual arrest under the numbers/distance provision. They will very likely picket again, and when they do, they desire to engage in conduct violative of both provisions, yet arguably protected by the constitution. The statutes are not moribund and the state's only disclaimer of enforcement does not by its terms apply to future strike activity. Under these circumstances, we find that plaintiffs are not simply attempting to obtain an advisory opinion or to enlist the court in a general effort to purge the Nebraska statute books of unconstitutional legislation. Rather, we find their interests sufficiently adverse to the defendants with respect to both the numbers/distance and the communications provisions to present a case or controversy within the court's jurisdiction.

### III. THE MERITS

■ We turn now to the merits of plaintiffs' challenge. We first consider the numbers/distance provision of Neb.Rev. Stat. § 281318(1)—(3), which prohibits as "mass picketing" any form of picketing "in which there are more than two pickets at any one time within either fifty feet of any entrance to the premises being picketed or within fifty feet of any other picket or pickets." [11]

Originally enacted in 1949, Neb.Rev.Stat. § 28–1318 has never been authoritatively construed by the Nebraska courts. The district court construed the numbers/distance provision as a time, place, and manner restriction on expressive activities in a public forum. Recognizing a legitimate state interest in the regulation of violence, the court nonetheless found there was no clear danger of violence presented by the type of picketing prohibited, i.e., two persons standing within fifty feet of each other or within fifty feet of a company entrance. Moreover, the court held the state had failed to show the statute was the least restrictive means of preventing violence, noting the state had ample alternative means of achieving this end. [12] The court

---

**10.** In fact, in this case, the union was subject to strict enforcement of the numbers/distance provision in 1982, was threatened with such enforcement by a new county attorney in 1986, and then the same attorney later decided to enforce the statute strictly only if there were "problems."

**11.** *See* n. 2, *infra*.

**12.** The court cited section 28–1318(1)'s prohibition on the obstruction of ingress and egress to and from the premises being picketed, and provisions of section 28–1317 prohibiting, *inter alia,* assault or threatening behavior in connection

thus concluded section 28–1318's numbers/distance provision was facially overbroad.

Defendants challenge this conclusion on appeal, arguing primarily that a narrowing construction of the statute could be adopted which would avoid the constitutional difficulties. Defendants suggest the numbers/distance provision could be interpreted to apply only when picketing has become violent or involves violence. Amicus urges the court to read the fifty foot formula as applicable only when ingress or egress is obstructed.

■ We recognize that the overbreadth doctrine is "strong medicine" to be employed "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). A statute is not overbroad unless the overbreadth is not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Id.* at 615, 93 S.Ct. at 2917. *See Boos v. Barry*, — U.S. —, 108 S.Ct. 1157, 1168, 99 L.Ed.2d 333 (1988); *City of Houston v. Hill*, — U.S. —, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987). Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. *Boos*, 108 S.Ct. at 1168–69; *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916.

Thus, a state statute should be deemed facially invalid only if (1) it is not readily subject to a narrowing construction by the state courts and (2) its deterrent effect on legitimate expression is both real and substantial. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975). In considering the possibility of a narrowing construction, however, the court must bear in mind that federal courts are generally without authority to construe or narrow state statutes. *Boos*, 108 S.Ct. at 1168; *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972); *Gooding v. Wilson*, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972).

"Federal courts 'do not sit as a 'super' state legislature, [and] may not impose [their] own narrowing construction ...' if the state courts have not already done so." *Hill v. City of Houston*, 789 F.2d 1103, 1112 (5th Cir.1986), *aff'd*, — U.S. —, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

In *Boos v. Barry*, — U.S. —, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), the Supreme Court considered the constitutionality of a provision of the D.C.Code which prohibited congregating within 500 feet of an embassy and refusing to leave after being ordered to do so by law enforcement officials. The Court of Appeals had narrowly construed the statute to apply only to situations in which "the police reasonably believe that a threat to security or peace of the embassy is present." *Id.* 108 S.Ct. at 1168. The Supreme Court approved this narrowing construction, emphasizing that the D.C.Code could properly be narrowed by the Court of Appeals since it was enacted by Congress, not by a state legislature, and federal courts had both the power and the duty to adopt narrowing constructions of federal legislation. *Id.* at 1168–69.

Our role in this case, given that we are presented with a challenge to a state statute which has not been authoritatively construed, is to determine whether the constructions of section 1318's numbers/distance provision urged by defendants and amicus are "reasonable and readily apparent." *Id.* at 1168. *See Hill v. City of Houston*, 789 F.2d at 1112. After careful examination, we conclude they are not.

Nothing in the language of section 1318 suggests the fifty foot limitations apply only in circumstances of violence or in situations where ingress or egress is being restricted. In fact, the language of the statute suggests to the contrary, since to hold the limitations applied only where ingress or egress is restricted would render superfluous that portion of the statute specifically directed to restrictions on ingress or egress. *See* Neb.Rev.Stat. § 28–1318(1). Nebraska courts consider all parts of an

---

with picketing activities, as well as provisions of the state criminal law prohibiting assault and

disturbing the peace. *See* Neb.Rev.Stat. §§ 28–1322 and 28–308, 309, and 310.

act relating to the same subject in construing a particular statute, and will interpret each part so as to avoid rejection of a sentence, clause, or word as superfluous, since the legislature is presumed to have intended every provision of a statute to have meaning. *See, e.g., Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173, 177 (1985); *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186, 188 (1984).

The available legislative history of section 1318 is inconclusive. While it suggests legislators were concerned with the violence and restrictions on access to premises which had occurred in prior strikes in Omaha, it also reveals an awareness that the statute's reach was broader than those concerns. *See* Minutes of the Senate Government Committee Meeting, March 23, 1949. Finally, there is no consistent enforcement history which supports the narrowing construction urged by the state, and the record reveals the statute has been literally enforced at least as recently as 1982.[13]

■ Under these circumstances, we find it beyond our power as a federal court to rewrite the broad, straightforward language of the numbers/distance provision to avoid the constitutional difficulties presented by the plain meaning of its terms. *See City of Houston*, 107 S.Ct. at 2513–15; *Lewis v. City of New Orleans*, 415 U.S. 130, 134, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974). We agree with the district court that as written section 28–1318's numbers/distance provision is facially overbroad. *See Howard Gault Co. v. Texas*

*Rural Legal Aid, Inc.*, 848 F.2d 544, 558–61 (5th Cir.1988) (striking down similar provision of Texas law).

■ Plaintiffs also challenge the communications provision of section 1317(1)(a), which penalizes the interference or attempted interference with any person's exercise of his or her lawful right to work or right to enter upon or pursue any lawful employment by (1) using threatening language toward such person or the person's family for the purpose of influencing such person to quit or refrain from seeking certain employment, or (2) by persisting in talking to or communicating in any manner with such person or members of the person's family against their will for a similar purpose.[14]

In view of the other provisions of the statute which govern conduct, *see* Neb.Rev. Stat. §§ 28–1317(1)(b)–(e) (1985),[15] we agree with the district court that the communications provision is clearly intended to apply to matters of speech. *See City of Houston*, 107 S.Ct. at 2508–09; *United States v. Grace*, 461 U.S. 171, 176, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983); *Cohen v. California*, 403 U.S. 15, 18–19, 91 S.Ct. 1780, 1784–85, 29 L.Ed.2d 284 (1971). That the speech is unwelcome does not deprive it of protection. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982); *Cohen*, 403 U.S. at 26, 91 S.Ct. at 1788; *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971).

13. The district court took judicial notice of a more recent prosecution, but we are unable to determine from the record before us the circumstances of this prosecution. The record does, however, establish that in 1982 arrests were made for failure to comply literally with the fifty foot formula. William Schmitz testified that if two strikers "wandered together to borrow a cigarette from each other, they were threatened with arrest." He also testified that police would wake sleeping picketers late at night and would threaten them with arrest if they remained within fifty feet of each other.

14. *See* n. 4, *infra*.

15. These sections penalize the interference or attempted interference with a person's exercise of his or her right to work by
  (b) Following or intercepting such person from or to his work, from or to his home or lodging, or about the city, against the will of such person, for such purpose; or
  (c) Menacing, threatening, coercing, intimidating, or frightening in any manner such person for such purpose; or
  (d) Committing an assault upon such person for such purpose; or
  (e) Picketing or patrolling the place of residence of such person, or any street, alley, road, highway, or any other place where such person may be, or in the vicinity thereof, for such purpose, against the will of such person.

"Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston,* 107 S.Ct. at 2509 (citing *Terminiello v. City of Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949)). "[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminello,* 337 U.S. at 4, 69 S.Ct. at 896.

The government may regulate speech in a public forum only if the restrictions "are content-neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication." *Grace,* 461 U.S. at 177, 103 S.Ct. at 1707 (citations omitted). "Additional restrictions such as an absolute prohibition on a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling governmental interest." *Id.* For the state to enforce a content-based exclusion, it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Frisby v. Schultz,* —— U.S. ——, ——, 108 S.Ct. 2495, 2499–2500, 101 L.Ed.2d 420 (1988) (citing *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983)). When a regulation allegedly infringes upon the exercise of First Amendment rights, "the proponent of the regulation must demonstrate that the government's objectives will not be served sufficiently by means less restrictive of first amendment freedoms." *ACORN v. City of Frontenac,* 714 F.2d 813, 818 (8th Cir.1983).

The pivotal issue in this appeal with respect to the communications provision is whether the provision is readily susceptible to a construction which is narrowly tailored to achieve the state's interest in preventing violence. Defendants argue section 1317(1)(a) can be construed to apply only to "fighting words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire,* 315 U.S. 569, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). So construed, the statute would not be facially overbroad, since "such utterances are of no essential part of any exposition of ideas, and are of such slight social value as a step to the truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.*

As with section 1318, our role is not to redraft the statute, but rather to "extrapolate its allowable meaning." *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972). *See Boos,* 108 S.Ct. at 1168. Absent any authoritative construction of section 1317(1)(a) by the Nebraska courts, we begin with an analysis of its language. The statute contains two clauses. The first prohibits "[u]sing threatening language" to induce a person not to exercise his or her lawful right to work; the second prohibits "persisting in talking to or communicating in any manner with" such person against their will for a similar purpose.[16]

The Fifth Circuit recently considered the constitutionality of a statute very similar to the "threatening" clause of section 1317(1)(a) in *Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 848 F.2d 544, 561–63 (5th Cir.1988). The statute at issue in *Gault* made it unlawful to interfere or seek to interfere with a person's right to work by using "insulting, threatening or obscene language."[17]

---

16. *See* n. 4, *infra.*

17. Article 5154d § 2 provides:
    It shall be unlawful for any person ... by use of insulting, threatening or obscene language, to interfere with, hinder, obstruct or intimidate, or seek to interfere with, hinder, ob-

struct, or intimidate, another in the exercise of his lawful right to work, or to enter upon the performance of any lawful vocation, or from freely entering or leaving any premises. Tex.Labor Code Ann., art. 5154d § 2 (Vernon 1987).

Like the case at bar, the Fifth Circuit did not have the benefit of an authoritative limiting construction by the Texas courts, but it did have the benefit of two state court cases narrowing the application of related provisions of Texas' picketing laws to give "ample breathing room to First Amendment rights." *Sherman v. State,* 626 S.W.2d 520, 525–27 (Tex.Crim.App. 1981); *Dallas General Drivers v. Wamix, Inc.,* 156 Tex. 408, 295 S.W.2d 873, 879 (1956).[18] Based upon the reasoning of these decisions, as well as the presumption of constitutionality accorded statutes under Texas law, the court held "the only feasible construction of article 5154d § 2 is that its reach is limited to 'fighting words' as that term is defined by *Chaplinsky* standards." *Gault,* 848 F.2d at 563.

We do not have the benefit of any Nebraska Supreme Court cases similar to those relied upon in *Gault.* Like Texas, however, the Nebraska Supreme Court has stated that it will construe a statute, whenever possible, so as to render the statute constitutional. *See, e.g., State v. Burke,* 225 Neb. 625, 408 N.W.2d 239, 246 (1987); *Nebraska Public Power District v. City of New York,* 212 Neb. 747, 326 N.W.2d 22, 29 (1982). *Cf. Frisby v. Schultz,* —— U.S. ——, ——, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988) (rejecting broad reading of ordinance as running afoul of "well-established principle that statutes will be interpreted to avoid constitutional difficulties"). Nebraska courts will also "look to the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served" by a statute, and then will place on the statute a "reasonable construction which best achieves its purpose." *State v. Burnett,* 227 Neb. 351, 417 N.W. 2d 355, 357 (1988); *Rosnick v. Marks,* 218 Neb. 499, 357 N.W.2d 186, 188 (1984).

Applying these principles to the case at bar, we find no basis for disagreeing with

the conclusion reached by the Fifth Circuit in *Gault.* Unlike section 1318's broad prohibition of any congregation of people, intended at best to eliminate the potential for violence, the "threatening" clause of section 1317 is directed at a specific harm. The word "threat" means "a communicated intent to inflict physical or other harm on any person or on property;" "an expression of intention to inflict evil, injury or damage." Black's Law Dictionary (5th ed. 1979); Webster's Seventh New Collegiate Dictionary (1965). Synonyms for "threaten" include "to warn or terrorize." W. Stasky, West's Legal Thesaurus/Dictionary (1986). No great leap is required to interpret the words "threatening language" in section 1317(1)(a) as consistent with those "fighting words" which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

■ While not authoritative, defendant state officials' position that section 1317(1)(a) is limited to "fighting words" is entitled to some deference, particularly since there has been no enforcement of the "threatening" clause inconsistent with defendants' proposed construction. *See Frisby v. Schultz,* —— U.S. at —— – ——, 108 S.Ct. at 2500–01 (adopting limiting construction of ordinance proposed by town's attorney); *id.* at ——, 108 S.Ct. at 2505 (White, J., concurring) (noting Court has relied on reliable representations of state and federal officials as to how a statute will be enforced); *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1971) (interpretation of statute given by those charged with enforcing it entitled to some deference). *Cf. Gooding v. Wilson,* 405 U.S. 518, 524, 92 S.Ct. 1103, 1107, 31 L.Ed.2d 408 (1972) (history of broad enforcement negated narrowing construction).

Thus, we conclude there is every reason to believe the Nebraska courts would in

---

18. In *Wamix,* the Texas Supreme Court dissolved an injunction against striking workers, holding such an injunction could not lie to prohibit references to working employees as "damned scabs," but could only reach intimidating or coercive speech. 295 S.W.2d at 879. In *Sherman,* the court held article 5154d § 1(2),

which prohibited the obstruction of ingress and egress to the entrance of any premises, was limited to situations where passage was either severely restricted or completely blocked. 626 S.W.2d at 525–27. *See Cameron v. Johnson,* 390 U.S. 611, 615–17, 88 S.Ct. 1335, 1337–38, 20 L.Ed.2d 182 (1968).

fact construe the "threatening" clause as defendants allege. Limited to "fighting words," we hold this clause is not substantially overbroad, and we reverse the district court's decision to the contrary.

■ We reach a different conclusion, however, with respect to the second clause of section 1317(1)(a). This clause applies by its terms to "talking or communicating in any manner with" any person in an effort to persuade that person to quit or refrain from seeking certain employment. As the plaintiffs point out, the "talking" clause could be applied to peaceful requests to honor a picket line, to attempts to inform strikebreakers of the union's grievances, and to general calls for worker solidarity. Limiting so broad a clause to "fighting words" requires more than judicial construction, it requires judicial redrafting, a task the Nebraska courts have refused to undertake:

> It is not within the province of the court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute.

*County of Douglas v. Board of Regents,* 210 Neb. 573, 316 N.W.2d 62, 65 (1982). *See Sorensen v. Meyer,* 220 Neb. 457, 370 N.W.2d 173, 177 (1985).

We too find it beyond our power to rewrite the "talking" clause as defendants suggest. This holding is supported by several Supreme Court cases in which the Court has refused to narrow to "fighting words" statutes far more restrictive than the "talking" clause of section 1317(1)(a). In *City of Houston v. Hill,* — U.S. —, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), for example, the Court rejected the City of Houston's argument that an ordinance making it unlawful to "in any manner oppose, molest, abuse or interrupt any policeman" was limited to "fighting words," noting the ordinance on its face included speech that "in any manner interrupt[s]" an officer. *Id.* 107 S.Ct. at 2509–10. In other cases the Court has refused to narrow to "fighting words" statutes which made it unlawful for any person "wantonly

to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police," *Lewis v. City of New Orleans,* 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974), or which penalized the use of "opprobrious words or abusive language, tending to cause a breach of the peace." *Gooding,* 405 U.S. at 519, 522–27, 92 S.Ct. at 1104, 1106–08. Section 1317(1)(a)'s prohibition on "persisting in talking to or communicating with" people is much farther from "fighting words" than the above statutes considered by the Supreme Court.

We thus reject defendants' proposed construction of the second clause of section 1317(1)(a), and agree with the district court that as written this clause plainly runs afoul of the First Amendment.

## IV. CONCLUSION

For all of the foregoing reasons, we find the district court properly exercised its jurisdiction to entertain plaintiffs' challenge to the Nebraska picketing laws. We affirm the court's judgment that the "numbers/distance" provision of section 1318(1) and the "talking" clause of section 1317(1)(a) are facially overbroad, and hence, unconstitutional. Because we find the "threatening" clause of section 1317(1)(a) is readily susceptible to a construction limiting its application to "fighting words," we reverse the district court's judgment as to this provision, and hold that, as limited, the "threatening" provision of section 1317(1)(a) is not substantially overbroad.

ROSS, Senior Circuit Judge, dissenting.

I respectfully dissent from the majority opinion to the extent that it holds that the plaintiff unions' challenge to the constitutionality of Neb.Rev.Stat. § 28–1317(1)(a) represents a justiciable claim. As the majority correctly noted, Article III of the United States Constitution requires that an "actual case or controversy" exist before a federal court can exercise jurisdiction. The Supreme Court has stated, "the question in each case is whether the facts alleged, under all the circumstances, show that there

is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). When plaintiffs " 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298–99, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979) (quoting *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971)). Plaintiffs must possess the requisite injury to establish justiciability with regard to each of the statutes they wish to challenge. Maj. op. at 427, (citing *Babbitt, supra*, 442 U.S. at 292, 99 S.Ct. at 2305).

In the instant case, the majority relies upon several facts in making its determination that the plaintiff unions have presented justiciable claims. First, the Dakota County Attorney stated that he had the authority to enforce the picketing statute and would enforce that statute if there were problems. Second, the majority found significant the fact that the county attorney sought to curtail the unions' picketing activities by denying the union access to plant exits, by his involvement in the placement of the union's picket shacks and by the supervision he exercised with respect to union demonstrations and the numbers and placement of pickets around the plant. Additionally, the majority found relevant the history of past arrests or threats of arrests in establishing the justiciability of plaintiffs' claims. The majority noted that in a 1982 strike the union was subject to strict enforcement of the section 1318 numbers/distance provision. Finally, the majority placed emphasis on testimony by union officials that but for the existence of the picketing statutes and the county attorney's statements, the union would have had more people picketing, would have had more people stationed at plant entrances and would have held more demonstrations.

An examination of the factors relied upon by the majority makes it immediately apparent that such facts go to the existence of a present threatened injury relating to the union's challenge to the numbers/distance provision of section 1318 only. There is *no evidence in the record whatsoever* concerning the actual enforcement or threatened enforcement of the communications provision of section 1317(1)(a). Plaintiffs' claim that they suffered a chilling effect upon the exercise of their constitutional rights due to the feared enforcement of section 1317(1)(a) is not, by itself, sufficient to establish a justiciable claim. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972).

Because of the complete absence of evidence in the record indicating that the plaintiff unions suffered any more than imaginary or speculative fears of state prosecution, *Babbitt, supra*, 442 U.S. at 298, 99 S.Ct. at 2308, under section 1317(1)(a), it is my judgment that the unions have failed to state a justiciable claim with respect to section 1317(1)(a) and accordingly their claim should be dismissed for lack of jurisdiction.